NOT DESIGNATED FOR PUBLICATION

No. 128,358

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LAWRENCE JOSEPH EKDAHL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; GRANT D. BANNISTER, judge. Oral argument held February 10, 2026. Opinion filed March 13, 2026. Affirmed.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., MALONE and HILL, JJ.

PER CURIAM: Lawrence Joseph Ekdahl appeals the district court's denial of a motion to suppress evidence discovered during a warrantless entry of his apartment that led to the discovery of a marijuana growing operation. That discovery provided probable cause for law enforcement to obtain a warrant to later search the residence and seize the evidence. The district court found the emergency aid exception applied to justify the initial warrantless entry into the residence. Ekdahl's main claim on appeal is that the district court erred in finding the emergency aid exception applied. After thoroughly reviewing the record, we reject Ekdahl's claim and affirm the district court's judgment.

1

*Factual and Procedural Background*

In the early morning hours of December 23, 2021, police officers entered Ekdahl's apartment after a neighbor reported that an alarm had been sounding inside for several hours. Upon entering the apartment without a warrant, the officers found a marijuana growing operation. After that discovery, the police obtained and executed a search warrant on the residence and seized the evidence. The State later charged Ekdahl with one count each of distribution or possession of marijuana with intent to distribute within 1,000 feet of school property, cultivation of marijuana, endangering a child, and felony and misdemeanor possession of drug paraphernalia.

Ekdahl moved to suppress all evidence obtained from both the initial entry into the apartment and the warrant supported search along with all statements that he made following the search. Ekdahl argued that the initial warrantless entry was unsupported by any exception to the warrant requirement and the subsequently executed search warrant was tainted by the warrantless entry, in violation of the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights. The State responded that the emergency aid exception supported the warrantless entry and that the warrant and supporting affidavit were thus valid.

At the hearing, Tyler Budke, a captain with the Manhattan Fire Department, testified first. Budke responded to a call for what he called a "modified fire alarm," which he described as a fire alarm of some kind going off. Budke arrived at a duplex apartment where the resident of unit one had reported that the detectors had been sounding in the neighboring unit, which was Ekdahl's residence. The neighbor reported alarms going off since around 10 p.m. and Budke arrived at around 1:30 a.m. The neighbor also reported that she knew someone lived in the home with an infant. Budke saw a truck parked in the middle of the driveway by the entry to Ekdahl's unit. He knocked on Ekdahl's door and asked dispatch to contact the property owner but received no response to either inquiry.

2

Budke could hear an alarm going off inside Ekdahl's unit and his attention moved to figuring out what was causing the alarm. Budke reasoned that it was the middle of the night, the apartment was where people would sleep, and a vehicle was parked right by the entrance, which led him to presume that someone was in the apartment until he could find out otherwise. He testified that a fire alarm or carbon monoxide alarm were the two most likely alarms that could have been sounding.

The home itself did not appear actively on fire. Budke saw no lights on inside the apartment and the door handles were not hot to the touch. Budke used a thermal imaging camera that would indicate if a "sizable fire" was active inside. The thermal imaging camera could only detect the heat of a person if that person was in front of a window, but it could not detect a person through an exterior wall. The camera could detect heated smoke, but it would not detect light smoke that did not affect the background temperature. Budke saw nothing of concern while using the thermal imaging camera.

Budke testified about the sources and dangers of carbon monoxide and then specified that his two main concerns were carbon monoxide in the home and someone sleeping with a cooking fire or cooking smoke. The windows had blinds covering them on the inside so Budke could not see enough through them to feel comfortable leaving the situation. The fire crew discovered an unlocked window at the back of the apartment.

Eventually, Budke contacted the police for assistance, which he described as routine so his fire crew did not have to enter the home unarmed. When the police arrived, an officer entered through the unlocked window that had been located earlier. The alarms stopped sounding right about when the officer was crawling through the window, but the alarms resumed later. The officer who entered through the window opened the front door from the inside and allowed other officers to enter. After the police found no occupants within the apartment, the fire crew disabled the detectors. The fire team determined the alarms were smoke detectors and found no evidence of fire or carbon monoxide.

3

Dustin Weiszbrod, a sergeant with the Riley County Police Department, testified next. Weiszbrod responded to Budke's call for assistance. When Weiszbrod arrived on the scene, Budke briefed him on the details of the alarm and wanting to get inside to investigate. Weiszbrod was concerned that someone was in the home mainly because there was a truck parked in the driveway associated with Ekdahl's unit and a motorcycle was also sitting on the porch area of the unit.

After the fire crew opened the window, Weiszbrod directed other police officers to call out for occupants in the building. After "some time" without a response, Weiszbrod had an officer crawl through the window. The officer opened the front door from the inside, and Weiszbrod, Budke, and other police officers and fire crew members walked through the residence. Weiszbrod expressed concern that someone inside was injured or unconscious because alarms were sounding in the home, the vehicles parked outside and on the porch, and because nobody could contact anyone associated with the home.

Jonathan Kunkleman, the officer who crawled through the unlocked window, was the final witness. Kunkleman expressed concern that someone could have been inside the home injured because of the alarm going off and because he could not see into the home, especially the entire second floor. Kunkleman believed someone could have been inside the home injured and just not responding to the officers and fire crew outside. Upon entering through the window Kunkleman immediately opened the door for the others outside. A search of the residence found no occupants. Kunkleman described the "gist" of what was found within the residence as marijuana plants in different stages of growth.

After the State rested, Ekdahl presented no evidence of his own. The State argued that Budke's concern about carbon monoxide poisoning, not knowing what kind of alarm was sounding, and the vehicle in the driveway of Ekdahl's unit, made it so the fire crew could not just leave without further investigation to rule out that someone was not injured inside. Ekdahl argued that the evidence cut against a reasonable belief that carbon

4

monoxide was a threat or that a person was inside to support the emergency aid exception. The State responded that the officers and fire crew did not need positive knowledge that someone was inside and in danger to enter without a warrant under the emergency aid exception, they only needed a reasonable belief.

The district court ruled from the bench and cited the early morning hour, the vehicle in the driveway, and alarms going off without anyone exiting the home as indicators that someone could have been inside and unable to exit due to factors like inebriation, carbon monoxide, or smoke inhalation. The district court found the initial entry into the home justified under the emergency aid exception and also found that the warrantless search for the home's occupants that turned up the marijuana plants was lawful. Given the district court's ruling, Ekdahl then conceded while reserving his opportunity to appeal that the warrant supported search should also be deemed lawful.

The case proceeded to a bench trial where Ekdahl lodged a contemporaneous objection to admitting the evidence found in the home based on his motion to suppress, which the district court acknowledged as a continuing objection. Near the end of the trial the State moved to amend the cultivation of marijuana count to cultivation of marijuana between 5 and 49 plants based on the evidence presented. The district court found Ekdahl guilty of cultivation of marijuana and misdemeanor possession of drug paraphernalia and not guilty on all other counts. The district court sentenced Ekdahl to 59 months in prison for cultivation of marijuana and a concurrent 6-month jail term for misdemeanor possession of drug paraphernalia. Ekdahl timely appealed the district court's judgment.

*Did the district court err in denying the motion to suppress?*

Ekdahl's sole claim on appeal is that the district court erred in denying his motion to suppress because no exceptions to the warrant requirement applied to justify the initial entry into the residence. As a result, Ekdahl asserts there was no probable cause for law

enforcement to obtain a warrant to later search the residence and seize the evidence. Ekdahl maintains the evidence was seized from his home in violation of the federal and Kansas Constitutions. The State argues that the district court's decision was supported by substantial competent evidence and by caselaw on the emergency aid exception to the warrant requirement under the federal and state Constitutions.

On a motion to suppress, an appellate court generally reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo. *State v. Garrett*, 319 Kan. 465, 469, 555 P.3d 1116 (2024). In reviewing the factual findings, an appellate court does not reweigh the evidence or assess the credibility of witnesses. 319 Kan. at 469. When, as here, the material facts supporting the district court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Mendez*, 319 Kan. 718, 735-36, 559 P.3d 792 (2024).

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Kan. Const. Bill of Rights, § 15. These rights are fundamental and must be safeguarded by the courts. The Kansas Supreme Court has long held that the search and seizure provisions of the Kansas and United States Constitutions are similar and provide the same rights and protections. See, e.g., *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014).

"Under the Fourth Amendment to the United States Constitution, a warrantless entry into a private dwelling by law enforcement officers is considered unreasonable and invalid unless it falls within a recognized exception to the warrant requirement." *Neighbors*, 299 Kan. at 239. The emergency aid exception is one such limited exception permitting a warrantless search when: "(1) law enforcement officers enter the premises

6

with an objectively reasonable basis to believe someone inside is seriously injured or imminently threatened with serious injury; and (2) the manner and scope of any ensuing search once inside the premises is reasonable." 299 Kan. at 249.

Ekdahl claims the district court erred in finding the emergency aid exception applied. Ekdahl challenges only the first prong of the exception and makes no argument on the second prong. Ekdahl argues that the first prong of the emergency aid exception was not satisfied where "the officers had no reasonable basis to conclude that someone was inside [Ekdahl's] residence." Ekdahl points to evidence indicating the house was unoccupied such as the fact there were no lights on inside, none of the first responders observed movement inside, and nobody responded to the various door and window knocks and other callouts. But Ekdahl wants us to consider only the evidence that supports his position and ignore the evidence that supports the State's position.

The district court heard substantial competent evidence that the law enforcement officers had an objectively reasonable basis to believe someone was inside the home. Budke and Weiszbrod testified that a truck was parked on the driveway associated with Ekdahl's main entrance. A motorcycle was parked on the front porch area. The vehicles were registered to the people who lived at the apartment. Budke arrived on the scene around 1:30 a.m. while Weiszbrod and Kunkleman arrived around 2 a.m. The early morning hour and parked vehicles registered to the apartment's residents created a reasonable and common-sense inference that someone was likely inside the apartment.

Ekdahl next argues that even if the evidence supports a reasonable basis that someone was inside the apartment, "there is nothing to support that they or anyone else was seriously injured or imminently threatened with serious injury." We disagree. The district court heard substantial competent evidence that, assuming there was a person inside the apartment, that person might be seriously injured or under imminent threat of serious injury. Budke testified that he informed Weiszbrod what was happening at the

7

scene including the need to determine the type of alarm going off. Weiszbrod knew that the alarm could be a fire alarm or a carbon monoxide alarm. Kunkleman testified that he was concerned someone could be inside and injured in part because he was unaware of how to tell the difference between a fire alarm and a carbon monoxide alarm. Weiszbrod testified that being unable to contact any residents of the apartment despite vehicles parked outside led him to fear that someone was inside and unconscious despite the alarms. Evidence of the inability to make contact with Ekdahl or another resident along with the time of night, the alarms sounding, and the presence of vehicles creates a reasonable inference that someone could have been inside the apartment and unable to respond or exit due to serious injury resulting from fire, smoke, or carbon monoxide.

Ekdahl asserts that because the fire crew waited for the police to arrive to enter the residence, this fact dispels "the notion that anybody actually believed there was any emergency." We disagree. The fire crew was justified in waiting a reasonable time for police protection before entering the residence unarmed. This action does not negate the fact that both the fire crew and the police department were called to the residence to investigate an emergency involving a potentially dangerous situation. Ekdahl also argues that the police had time to obtain a search warrant before making the initial entry into the residence. But obtaining a search warrant requires probable cause that evidence of a crime would be found in the residence, so the police had no grounds to seek a search warrant when they initially arrived at the residence to investigate the emergency.

It is easy to second-guess emergency responders in a situation like this one. But had the fire crew and the police officers simply abandoned their efforts to investigate the emergency call and someone was found dead in Ekdahl's apartment the next morning, the emergency responders would be facing completely different consequences. Based on the evidence presented to the district court, and without engaging in hindsight, we find there was nothing in the way the fire crew and the police officers handled this situation that was objectively unreasonable and a violation of Ekdahl's constitutional rights.

In sum, the following undisputed evidence supports the district court's finding that the officers had an objectively reasonable basis to believe someone was inside the apartment who was seriously injured or imminently threatened with serious injury:  (a) an alarm had been sounding at the apartment for 3 1/2 hours before the fire department arrived; (b) the fire team and the police officers could not tell whether it was a fire alarm or a carbon monoxide alarm; (c) a neighbor told Budke that she knew someone lived in the apartment with an infant; (d) vehicles registered to people who lived at the residence were parked outside the apartment; and (e) the incident occurred late at night when typically most people would be at home sleeping. Just because there were no visible signs of a fire did not eliminate the officers' reasonable belief that someone was inside the apartment who was seriously injured or imminently threatened with serious injury.

The United States Supreme Court recently addressed the emergency aid exception to the warrant requirement in *Case v. Montana*, 607 U.S. ___, 146 S. Ct. 500, 223 L. Ed. 2d 382 (2026). In that case, Case telephoned his ex-girlfriend, J.H., sounding erratic and saying he was going to kill himself. J.H. heard a loud pop over the phone followed by silence. J.H. called the police, who met J.H. outside of Case's house. The responding officers knew that Case had a history of alcohol abuse and mental health issues, that he had previously threatened suicide, and that he once seemed to have tried to commit suicide-by-cop. The officers walked around the house, knocked on the doors, and through the windows saw empty beer cans and a notepad with writing on it along with an empty handgun holster. Case did not respond to attempts to contact him.

After the police chief arrived, the officers entered the house to render emergency aid if Case was still alive. When the police entered one of the rooms in the house, a healthy Case suddenly jumped from a closet where he had been hiding while holding a black object that an officer feared was a gun. The officer shot Case, who survived and was charged with assaulting a police officer. 146 S. Ct. at 503-04.

9

The United States Supreme Court took the case following the Montana Supreme Court's ruling that the emergency aid exception justified the warrantless entry into Case's home. Case claimed the reasonable basis standard for the emergency aid exception sounded in probable cause, and he argued that officers must have probable cause, not just reasonable suspicion, to believe an occupant is seriously injured or threatened with serious injury to enter a home without a warrant. The United States Supreme Court unanimously disagreed and found that probable cause, which is rooted in criminal investigations, has no place in the emergency aid exception to the warrant requirement. 146 S. Ct. at 507. The Court then reaffirmed that the objectively reasonable standard is the correct standard to apply in deciding whether the emergency aid exception has been met. 146 S. Ct. at 507-08.

We conclude that substantial competent evidence supports the district court's factual findings which in turn supports its legal conclusion that the emergency aid exception justified the police officers' initial warrantless entry into Ekdahl's residence. Although Ekdahl briefly asserts that the subsequent search with a warrant was unlawful, he argues only that the warrant affidavit was tainted by the initial warrantless entry. As Ekdahl conceded in district court, if the initial warrantless entry was justified by an exception then the entry with a warrant was lawful. We need not address the State's alternative claim that the good-faith exception would apply to save the search warrant. Finally, Ekdahl argues that the probable cause plus exigent circumstances exception to the warrant requirement and the community caretaking exception do not apply under our facts. But the State is not relying on these exceptions and the district court made no findings on them, so we need not address Ekdahl's arguments on these exceptions.

Affirmed.